**NATIONAL CREDIT ASSOCIATES, INC., Assignee of Dr. J. C. Bolin, and Dr. J. C. Bolin, Plaintiffs-Respondents,**

v.

**Jessee TINKER and Marjorie B. Tinker, Defendants-Appellants.**

**No. 24374.**

Kansas City Court of Appeals.

Missouri.

Feb. 7, 1966.

Motion for Rehearing and/or Transfer to Supreme Court Denied April 4, 1966.

Elwyn L. Cady, Jr., Kansas City, for appellants.

Darrell Havener, Robert C. Canfield, Kansas City, Watson, Ess, Marshall & Enggas, Kansas City, of counsel, for Dr. J. C. Bolin.

MAUGHMER, Commissioner.

The decisive issue here is whether or not a patient's suit for damages, alleging fraud in the prescription and application of professional treatment by her physician and commenced more than two years after the date of the last treatment, is barred under the Statute of Limitations requiring suits for malpractice to be brought within two years " * * * from the date of the act of neglect complained of."

The parties include the patient, Mrs. Marjorie B. Tinker, who is described in most of the pleadings as "Roberta Tinker". However, she filed a motion asserting that her correct name was "Marjorie" and asking that "Marjorie B. Tinker" be substituted for "Roberta Tinker". This motion was never ruled by the trial court but we shall sustain it and shall refer to her in this opinion as "Marjorie". The other participants are her husband Jessee Tinker, Dr. J. C. Bolin, D.O., and National Credit Associates, Inc., Assignee of Dr. J. C. Bolin.

The defendant Marjorie B. Tinker was a patient of Dr. J. C. Bolin, an osteopathic physician from January until June, 1960. She received professional treatments from him during this period. The pleadings assert and defendants Marjorie and Jessee in their briefs admit that the treatments were administered during these dates, and that the last treatment was rendered during June, 1960. We are unable to determine from the transcript (no testimony was adduced) or from the briefs what disability or disease Marjorie was suffering from or what kind of treatments were given. Dr. Bolin's charge for these services was $324, no part of which has been paid. In November, 1960, Dr. Bolin assigned the account to the plain-

tiff National Credit Associates, Inc. "for collection".

On October 19, 1963, National filed suit on the account against Marjorie Tinker and her husband Jessee Tinker in the magistrate court of Jackson County, Missouri. On November 19, 1963, more than 40 months after the date of the last treatment, the defendants Tinker filed their answer, setoff and counterclaim. Therein they alleged:

"That said Dr. J. C. Bolin represented to Jessie B. Tinker and Marjorie B. Tinker that the particular type of treatment he was capable to performing would relieve the condition of ill being suffered by said Marjorie B. Tinker; that he made such representation with knowledge of its falsity; that Jessie B. and Marjorie B. Tinker relied on such representation; and that as a direct result there was a substantial delay in securing proper professional attention for said Marjorie B. Tinker.

"That as a direct result of the misrepresentation whatever services performed by Dr. Bolin were rendered worthless and amounted to only legal harm.

"That as a result of said representation, said Marjorie B. Tinker was caused to suffer severe pain and mental anguish and required rehabilitative professional treatment with the expenditure of substantial sums."

The prayer was for damages in the sum of $12,000 against Dr. Bolin.

Defendants caused this pleading, with summons, to be served on Dr. Bolin, asserting that he was the "real party in interest." Thereupon the magistrate court transferred the case to the circuit court as the amount then involved exceeded its jurisdiction. The circuit court sustained defendant Bolin's motion to dismiss the counterclaim and remanded the cause to the magistrate court. The defendants have appealed.

Both parties in their briefs agree that "* * * the real controlling issue in this case is the statute of limitations"; that is, was the counterclaim timely filed or was it barred under the statute? Chapter 516, V.A.M.S., Statutes of Limitations, is general and provides numerous limitations periods for various actions.

"* * * statutes of limitation are statutes of repose enacted for the purpose of preventing the assertion of stale claims." 53 C.J.S. Limitations of Actions § 1, p. 902; Thatcher v. DeTar, 351 Mo. 603, 173 S.W.2d 760, 761.

"It may be stated as a sound general proposition that a cause of action accrues the moment the right to commence an action comes into existence, and the statute of limitations commences to run from that time." 34 Am.Jur. p. 92; Coleman v. Kansas City, 353 Mo. 150, 182 S.W.2d 74, 78.

"Statutes of limitation are favored in the law, and cannot be avoided unless the party seeking to do so brings himself strictly within some exception." Shelby County v. Bragg, 135 Mo. 291, 36 S.W. 600, 602, Hunter v. Hunter, Mo., 237 S.W.2d 100, 104.

There are two sections in Chapter 516, supra, which must be considered in the matter before us. Section 516.140 provides in part:

"Within two years: An action for libel, slander, assault, battery, false imprisonment or criminal conversation. All actions against physicians, surgeons, dentists, roentgenologists, nurses, hospitals and sanitariums for damages for malpractice, error, or mistake shall be brought within two years from the date of the act of neglect complained of, * * * *".

Section 516.120 provides in part:

"Within five years:

"(1) All actions upon contracts, obligations or liabilities, express or implied, * * *;

"(4) An action for taking, detaining or injuring any goods or chattels, including actions for the recovery of specific personal property, or for any other injury to the person or rights of another, not arising on contract and not herein otherwise enumerated;

"(5) An action for relief on the ground of fraud, the cause of action in such case to be deemed not to have accrued until the discovery by the aggrieved party, at any time within ten years, of the facts constituting the fraud".

It is the contention of respondent Bolin that the counterclaim asserted against him by the Tinkers is barred under the two-year statute. It is the contention of Mr. and Mrs. Tinker, the appellants, that their claim is an action for fraud and is restricted only by the limitation of five years as provided in Section 516.120(5). Additionally, they contend that they did not discover the alleged fraud or malpractice until less than two years before the counterclaim was filed and hence the action did not accrue more than two years prior to the date on which suit was filed.

Counsel have cited no Missouri cases, applying either the two or the five-year statute, where a claimant specifically pleaded fraud against a physician in the rendering of professional services. We have found no such Missouri case. However, efforts have been made to bypass the two-year statute and bring actions against physicians under other parts of the five-year statute.

In Barnhoff v. Aldridge, 327 Mo. 767, 38 S.W.2d 1029, 1030, 1031, the petition alleged that the defendant physician diagnosed plaintiff's condition as diseased gall bladder and "contracted and agreed" to remove her gall bladder, but instead cut wounds in plaintiff's back "under pretense of lifting one of the kidneys". The petition charged breach of contract and it was asserted that the action was not one asking damages for malpractice, but an action ex

contractu for breach of an express contract and that therefore the five-year statute under which causes of actions for breach of contract may be brought was applicable rather than the two-year limitation for malpractice suits. The court said:

"We think it is obvious that, though the petition in the instant case alleges an express contract between the parties, the gravamen or gist of the action is defendant's wrongful act. Canaday v. United Rys. Co., 134 Mo.App. 282, 114 S.W. 88; Hales v. Raines, 162 Mo.App. 46–62, 141 S.W. 917–921; Marty v. Somers, 35 Cal.App. 182, 169 P. 411. The statute invoked is a bar to all actions against physicians and surgeons for damages for malpractice, error, or mistake not brought within two years from the date of the act complained of. The limitation is not determined by the form of the action, but by its object. The improper performance by a physician or surgeon of the duties devolved and incumbent upon him and the services undertaken by him, whether same be said to be under a contractual relationship with the patient arising out of either an express or implied contract or the obligation imposed by law under a consensual relationship, whereby the patient is injured in body and health, is malpractice, and any action for damages, *regardless of the form thereof*, based upon such improper act, comes within the inhibition of the two-year statute of limitation." (Italics supplied.)

This statement was approved later by the Supreme Court in Baysinger v. Hanser, 355 Mo. 1042, 199 S.W.2d 644, 647.

The Barnhoff case is the subject of an annotation in 74 A.L.R. 1252. In the general discussion and with reference to the only case referred to under allegations of fraud, we find the following on pp. 1264 and 1265:

"A complaint alleging that, by reason of defendant's carelessness in extracting plaintiff's teeth, one of the same went down plaintiff's throat and lodged in her

lung, that defendant fraudulently concealed such fact, and that, by reason of the negligence and fraudulent concealment, plaintiff sustained great bodily injury, was held in Tulloch v. Haselo (1926) 218 App.Div. 313, 218 N.Y.Supp. 139, to state a cause of action within the Statute of Limitations governing malpractice causes rather than the limitation period applicable to actions for fraud. The opinion states: 'In the case at bar the direct cause of plaintiff's damage was the carelessness and negligence in permitting the tooth to fall down plaintiff's throat. The subsequent concealment of such negligent act may have aggravated the original wrong, but simply as a circumstance in the chain of events leading from the original carelessness, presumably adding to the damages which resulted therefrom. The concealment alleged is not the wrong which must be made the gravamen of an "action to procure a judgment on the ground of fraud", within Civil Practice Act, Sec. 48. * * * It was malpractice that was the proximate cause of the injury which the plaintiff sustained. *The relation of dentist and patient made it malpractice.* The failure to speak and to disclose his negligent act was a breach of duty which constituted malpractice' ". (Italics ours.)

In Horowitz v. Bogart, 218 App.Div. 158, 217 N.Y.S. 881, 882, plaintiff was suffering from a duodenal ulcer. His petition alleged defendant agreed to perform a surgical operation for removal of the ulcer but failed to do so and instead removed his appendix. The New York statute required an action for malpractice to be "commenced within two years after the cause of action has accrued". The suit was commenced more than two years after the operation. The court said:

"The sole question before the court is whether the complaint sets forth a cause of action for breach of contract or one for malpractice. If the latter, it is conceded that the defendant's motion to dismiss should have been granted.

\* \* \* \* \* \*

"While, in the complaint now under consideration, neither lack of skill nor negligence is charged, the basis of the charge is 'improper performance of the work to the personal injury of the plaintiff' ".

The court applied the two-year statute and dismissed the petition.

In Hellebrand v. Hoctor, 331 F.2d 453, 455, plaintiff sued the defendant doctor who was Superintendent of Missouri State Hospital No. 4, for false imprisonment and assault through the administration of shock treatments. Plaintiff was under a Michigan probate court guardianship. He sought to avoid the two-year limitation statute against physicians through the tolling provisions of Section 516.170 V.A.M.S. for insane persons. The United States Court of Appeals, Eighth Circuit, applied both of these statutes strictly and said:

" \* \* \* it is the law of the State of Missouri that the running of that statute (Sec. 516.140) cannot be tolled because of *fraud, concealment, or any other improper act* not provided in the statute, itself." (Italics added.)

The case of Thatcher v. DeTar, supra, is the subject of review in 9 Mo. Law Review, p. 102. In that case the defendant doctor negligently permitted a surgical needle to remain in plaintiff's body following a removal of his appendix in August, 1937, but continued to treat the plaintiff until August, 1939, when plaintiff obtained the services of other physicians who performed another operation in September, 1940, at which time plaintiff learned for the first time that his pain and disability were due to and caused by the presence of the needle. His petition charged the defendant with negligence. The trial court sustained defendant's demurrer on the theory that the two-year statute of limitations commenced to run in August, 1937, when the operation was performed.

On appeal the Supreme Court ruled that the statute did not begin to run until October, 1939, the last date upon which defendant treated plaintiff and closed its opinion with this statement:

> "An examination of the cases convinces us that the overwhelming weight of authority is that where the facts are as disclosed in plaintiff's petition the statute of limitations does not begin to run until the treatment of plaintiff's ailment by the defendant ceases. That conclusion is in harmony with our legislative expression on the subject, as illustrated by the statutes above quoted, and also in harmony with the overwhelming weight of authority."

It is noted that the Missouri statute requires that the action "be brought within two years from the date of the act of neglect complained of * * *", whereas the New York statute reads: "within two years after the cause of action has accrued". Conceivably, it might be argued that a cause does not accrue until the injury or negligence or malpractice was, or should have been discovered, but it seems clear that "the date of the act complained of" can only mean the date of the last treatment. Whether such a limitation is wise or fair or just is for the Legislature to decide.

We believe that the gist of the appellants' action is respondent doctor's wrongful acts or treatments—it is malpractice. The only relationship between the parties was that of patient and doctor. The applicable limitation cannot be determined by the form of the action alone and where the gravamen of the action is the defendant's improper, careless, negligent or wrongful acts as a physician, a petition for damages which in form alleges breach of contract or fraud will not result in bypassing the plain limitation which the Legislature has fixed for malpractice suits. Our Missouri court rulings, which are in line with the majority view, are that the statute begins to run on the date when the last treatment was completed.

We believe that appellants' counterclaim states only a cause of action for malpractice. It was not commenced until more than forty months after the date of the last treatment, on which date the cause of action accrued. Section 516.140, supra, is applicable and the action was barred unless commenced within two years after June, 1960, the date of the last treatment. It was not commenced until November, 1963. The trial court was correct in dismissing appellants' counterclaim.

Our conclusion on the limitation feature disposes of this appeal. It is not, therefore, necessary to determine whether or not Dr. J. C. Bolin is the "real party in interest" or if he was effectively joined as a party to the suit.

The judgment is affirmed.

SPERRY, C., concurs.

The foregoing opinion by MAUGHMER, C., is adopted as the opinion of the Court.

All concur.